208 P.2d 803

**ENDICOTT v. POTLATCH FORESTS,**
Inc., et al.
No. 7486.

Supreme Court of Idaho.
July 5, 1949.

Walter Oros, Boise, Frank L. Benson, Creston, Mont., for appellant.

Elder, Elder & Smith, Coeur d'Alene, for Potlatch Forests, Inc., and another.

E. B. Smith, Boise, for Western Hosp. Ass'n and another.

GIVENS, Justice.

October 24, 1943, claimant was working as a millwright for respondent and cross-appellant, Potlatch Forests, Inc., on a scaffolding which gave way; attempting to save himself, he grasped at a window sill, pulling and straining his right arm and hand; such clutching was ineffective and he fell about twenty feet to the floor, injuring his back. He was hospitalized, placed in hyper-tension and later in a canvas sling in an attempt to reduce a compression fracture with nerve involvement, then in a plaster cast. After its removal, he was held under observation for suspected disturbance of the disc between the fourth and fifth vertebrae.

Claimant, discharged as substantially surgically healed, was paid compensation under three successive agreements with respondents and cross-appellants, Potlatch Forests, Inc., and Workmen's Compensation Exchange, its surety, approved by the Board. The first, for total temporary disability from October 24, 1943, to September 2, 1944, forty-five weeks at $16 per week; the second, a specific indemnity agreement for permanent partial disability rated equal to loss of the arm at elbow, 99% of 220 weeks at $16 per week; subsequently, on change of condition, a third agreement March 10, 1947, for permanent partial disability equivalent to 75% loss of leg at the hip, 99% of 135 weeks at $16 per week; thus total awards of 400 weeks—the injury to the arm and back being at first separately considered.

Respondent, Western Hospital Association, having a hospital contract with the employer, thus originally joined as a de-

fendant, was on its motion dismissed from the proceedings because the record showed claimant would not be materially benefitted by additional hospitalization or surgery, and claimant did not want further surgery if it would not do him any good. Such dismissal is not resisted and therefore, such respondent is no longer involved herein.

Claimant's letter of October 7, 1947, was, over respondents' criticism, correctly held to be sufficient to constitute an application for increased compensation on account of change in condition.

Fraud was neither pleaded nor proved, nor does any fraud appear in the record.

■ Claimant's appeal presents his contention that the 400 weeks previously awarded under the approved agreements should not have been deducted from the present award of total permanent disability; thus making the identical contention rejected in McCall v. Potlatch Forests, Inc., Idaho, 208 P.2d 799, and on the authority of that case, the award in this particular is affirmed.

Section 72-310, I.C., specifically provides that:

" * * * In case the total disability begins after a period of partial disability, the period of partial disability shall be deducted from such total period of 400 weeks. * * *"

This, statute requires no construction; it is clear, plain and explicit. The total temporary disability heretofore awarded under Sec. 72-310, I.C., and the permanent partial under Sec. 72-313, I.C., must therefore be deducted from the period of 400 weeks during which $16 per week was paid; therefore, only payments of $8.00 per week now remain as awarded.

■ The Board indicates that prior to this case they had been deducting the pay-period and not the award-period, but becoming convinced this method was incorrect, they have herein changed. The pertinent Sections of the Statute, 72-310, 72-313. and 72-314 I.C., make the award-period and not the pay-period the criterion, and we, therefore, approve the Board's present method of computation.

Respondents' cross-appeal asserts the evidence is insufficient to support the finding and conclusion that claimant is now totally and permanently disabled.

Claimant, 55 years old, with less than an eighth grade education, married, with three minor children, formerly working mostly as a carpenter and miner, testified as to the pain he suffers since the accident when he tries to engage in his former trades and his inability to secure such employment; that he has a small acreage, keeps three cows and some chickens and can do no work requiring physical exertion; that he is sore and stiff, had worked at a light job some two years previous to the hearing; that he has several times applied for jobs, but has been rejected for work on building houses.

Dr. Ayers, a general practitioner, appeared in person and testified before two members of the Board at a hearing in Moscow, March 19, 1948, introducing in evidence certain X-ray pictures taken of claimant by him. In Spokane, Washington, March 24, Dr. Lynch, a specialist in neuro-surgery and neurologic diagnosis, testified before the Board. Thereafter, by deposition, Dr. Ayers' further testimony and claimant's and Dr. Burton's, an orthopedic specialist, together with certain reports made by the Doctors, were presented to the Board. All three physicians had examined claimant in person.

Dr. Lynch's diagnosis of claimant's present condition is: " * * * healed fracture of the upper lumbar vertebra, injury to the nerve roots of the cauda equina going to the right leg, and as a result of the injury to the vertebra he has pain and stiffness and limitation of motion in his back; as a result of injury to the nerve root going to the right leg, he has weakness, atrophy of the muscles of the calf of the right leg and disturbance in sensation in the skin to the right leg. As a result of injury to the roots of the brachial plexus he has weakness and contracture deformity of the 4th and 5th fingers of the right hand."

"His increased disability was due to increased stiffness of his back, and increased pain in his back because of the old injury to the 2nd lumbar vertebra."

From claimant's objective and subjective pain, and a spinogram, not conclusive as to nerve injury, Dr. Lynch concluded that claimant did not have a protruded intervertebral disc, which had been suspected previously, and that his leg pain, numbness and weakness are due to injury to the nerve roots of the cauda equina and not due to intervertebral disc.

Dr. Ayers testified claimant has limited forward flexion of the spine, mild kyphosis; Dupuytren's contracture of the third and fourth fingers on the right hand, not relevant to the spine; body of the second lumbar vertebra compressed anteriorly; wedged and almost complete destruction of the joint space, considerable calcification and spur formation on the anterior surface of the vertebral bodies, due to hyperplastic osteoarthritis; that there is encroachment on the root (nerve) canals; the intervertebral joints have become involved with an over-growth of bone which has reduced the size of the normal foramina, causing pressure on the nerves of the right leg, and claimant's condition will be slowly progressive through his life.

Dr. Burton testified claimant has 75% lack of normal back, and 35% of neck, flexion; impairment of flexion and sensation in his right arm and hand; his right hip has 25% less rotation than the left; moderate presence of osteoarthritis in general, severe at the site of the fracture; obliterated space between the first and second lumbar vertebra, indicating trauma to the disk; present, healed old fracture of the lumbar spine with nerve injury involv-

ing the brachial plexus and he has a fibrositis and myositis of his lower back; that the damage to the nerve roots is permanent; that spinograms are not used very much now on account of the risk involved.

It is suggested that because Dr. Ayers' substantial testimony and the testimony of the claimant, and Dr. Burton, were by deposition and Dr. Lynch testified in Spokane, the entire record is in effect by deposition and the Court, therefore, is in as good a position to determine the facts as the Board.

We need not determine such point, because of the conclusion reached, but in passing note that Dr. Ayers and Dr. Lynch did appear before the Board, and even though Dr. Lynch appeared before it in Spokane, it had the same opportunity to consider and observe the demeanor, manner, etc., of the witness as though he had appeared before the Board in Idaho, and limit of territorial jurisdiction would not seem to obliterate such impressions or bar consideration anent thereto.

We have carefully considered the entire record, which discloses that Dr. Ayers testified on direct examination that claimant was totally and permanently disabled, conceding on cross-examination he might do light work if he could get it.

Dr. Lynch's report stated claimant was totally and permanently disabled. Testifying before the Board, he stated further that because of claimant's present disability, the only work he should be allowed to take on would be work of a light character, and that any work involving any strain or stress or use of his back in lifting, would be inadvisable medically and might make claimant have more pain, and that as to claimant's ability to go out on the labor market and hire himself out as a laborer, he was totally disabled, but that under proper circumstances and given light work not involving use of his back, he could be gainfully employed, granting the circumstances under which he might be so employed, it would be difficult to find them.

Dr. Burton detailed at length claimant's condition at the time of his physical examination immediately prior to the taking of the Doctor's deposition and exhaustively detailed his prognosis, concluding claimant was totally and permanently disabled for any kind of work.

As we analyze the testimony of the physicians, there does not seem to be much real difference of opinion as to claimant's present physical condition, nor as to his inability to work at gainful employments. To the extent there is a conflict, we think Dr. Burton's testimony substantially justifies the conclusion of the Board that the claimant is now totally and permanently disabled.

Though under a different kind of insurance policy and not workmen's compensation, the statement of what constitutes total disablement in Goble v. New World Life Ins. Co., 57 Idaho 516, at page

521, 67 P.2d 280, 281, is in theory appropriate herein:

"The courts, generally, hold that in order to secure the benefits provided for in policies of insurance by reason of the degree of disability means by the use of such language as is here employed, it is not necessary for the insured to be absolutely helpless, or entirely unable to do anything worthy of compensation, or from which gain might be derived. If he is so disabled that substantially all the avenues of gainful employment are reasonably closed to him his condition is within the meaning of the covenant. Many cases so holding will be found assembled in the annotation to Prudential Ins. Co. [of America] v. South, 179 Ga. 653 [177 S.E. 499], 98 A.L.R. 781, 789." Murphy v. Mutual Life Ins. Co., 62 Idaho 362, at page 377, 112 P.2d 993.

Such criterion is in harmony with the following compensation cases: Pryor Coal Mining Co. v. Contino, 103 Colo. 87, 82 P. 2d 1101, at page 1102, being particularly appropriate as to claimant's work in caring for his chickens; New York Indemnity Co. v. Industrial Commission, 86 Colo. 364, 281 P. 740, at page 741:

"It here promotes justice, because, if one be totally and permanently disabled, he ought not be penalized for obtaining some trivial and unusual employment, or have the door of hope and ambition slammed in his face by being forbidden, on pain of having a portion of his meager sustenance withheld, to make any effort to add thereto. One may be totally disabled for all practical purposes of competing for remunerative employment in any general field of human endeavor and yet be able to obtain occasional employment under rare conditions and at small remuneration."

Rio Grande Motor Way v. De Merschman, 100 Colo. 421, 68 P.2d 446, at page 447:

"An injured workman is not to be denied a finding of total and permanent disability because not the victim 'of helpless paralysis reducing bodily functions to the minimum essential for the maintenance of a mere spark of life.' And though 'able to obtain occasional employment under rare conditions and at small remuneration' (the equivalent of precarious employment at half salary through family influence, as a matter of charity, or the recognition of a moral responsibility, or as a mere gratuity), one may still 'be totally disabled for all practical purposes of competing for remunerative employment in any general field of human endeavor.'" In re Iles, 56 Wyo. 443, 110 P.2d 826; Kuhnle v. Department of Labor and Industries, 12 Wash.2d 191, 120 P.2d 1003; Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000.

We find nothing in the evidence to cause us, if privileged to independently find the facts, to disagree with the Board's findings or conclusions. The cross-appeal, therefore, is without avail.

It is unnecessary to determine or discuss other points raised, as the above disposes of the essential features of the case. The award is affirmed. Costs to appellant.

HOLDEN, C. J., and PORTER, TAYLOR, and KEETON, JJ., concur.