921 P.2d 1200

**Lola BYBEE, Claimant–Appellant,**

v.

**STATE of Idaho, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant–Respondent.**

**No. 21757.**

Supreme Court of Idaho.

July 25, 1996.

Goicoechea Law Offices, Boise, for appellant. Lynn M. Luker, argued.

Mallea & Scrivner, Boise, for respondent. Wesley L. Scrivner, argued.

TROUT, Justice.

This is a workers' compensation case dealing with the liability of the Industrial Special Indemnity Fund (ISIF).

## I.

### BACKGROUND

In March of 1991, the claimant, Lola Bybee, began to work for the Idaho Department of Parks and Recreation as caretaker at the Massacre Rocks Park in Power County. Within six months, she suffered two industrial injuries. On July 20, 1991, she injured her elbow, and on September 4, 1991, she injured her knee. Following the knee injury, she was unable to continue working. At the time these injuries occurred, Bybee was 67 years old. She did not graduate from high school and has limited work experience and no transferable skills. Further, she has an extensive history of pre-existing medical conditions and has sustained previous industrial injuries.

In January 1979, while working for Lamb–Weston, Inc., Bybee injured her lower back. In 1981, she had spinal surgery which resulted in cervical fusion at the C4–5 and C5–6 levels. She was also diagnosed as having degenerative arthritis in her spine. In April 1982, while still employed by Lamb–Weston, Bybee injured her neck. In 1984, she filed workers' compensation claims for the 1979 and 1982 injuries against Lamb–Weston and the ISIF, alleging that she was totally and permanently disabled. In resolving these claims, the Industrial Commission (Commission) determined that Bybee was not totally and permanently disabled, but had incurred a permanent partial disability of thirty percent of the whole person.

Following 1984, Bybee had several jobs, including work at a nursing home and at a printing company. In February 1989, she had surgery on her neck and experienced a spontaneous fusion at the C3–4 level. Finally, Bybee has a binaural hearing loss which pre-dated her 1991 injuries. As of September 1991, the extent of impairment resulting from the hearing loss was rated at approximately sixteen percent of the whole person. Bybee testified this problem was so severe prior to the time she began working for the Department of Parks, that she had great difficulty even using the telephone.

## II.

### PROCEDURAL HISTORY

On May 11, 1994, Bybee filed a workers' compensation complaint against both the Department of Parks and the ISIF relating to the July and September 1991 injuries to her elbow and knee. She contends that pre-existing conditions combined with the subsequent injuries to render her totally and permanently disabled. She reached a settlement with her employer and its surety, the State Insurance Fund, and the only question presented is the liability of the ISIF.

A hearing was held before a referee who made findings of fact, conclusions of law, and submitted a proposed order for adoption by the Commission. The parties stipulated that Bybee is totally and permanently disabled. The referee, however, found that this disability pre-dated the 1991 industrial injuries. Therefore, applying the "but for" test articulated in *Garcia v. J.R. Simplot*, 115 Idaho 966, 772 P.2d 173 (1989), he concluded that the pre-existing conditions did not combine with the injuries to give rise to the total permanent disability, and that the ISIF is therefore not liable for the amount of disability arising from the pre-existing conditions. The Commission adopted the referee's findings of fact, conclusions of law, and proposed order and dismissed Bybee's claim.

## III.

### DISCUSSION

Bybee seeks to recover workers' compensation benefits from the ISIF. Therefore, she must establish that the requirements of I.C. § 72–332(1) have been met. Section 72–332(1) provides:

If an employee who has a permanent physical impairment from any cause or origin, incurs subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

We have held that this provision requires a claimant seeking to obtain contribution from the ISIF to establish: (1) that there was a pre-existing impairment; (2) that the impairment was manifest; (3) that the impairment was a subjective hindrance; and (4) that the pre-existing impairment and the subsequent injury in some way combine to result in total permanent disability. *E.g., Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 155, 795 P.2d 312, 317 (1990) (citations omitted).

In this case, the only element at issue in establishing ISIF liability is whether the pre-existing impairments and the work-related injuries combined to render Bybee totally permanently disabled. The Commission applied the odd-lot doctrine to conclude that Bybee was totally and permanently disabled prior to the occurrence of the industrial injuries in question. Therefore, the total disability did not result from the combined effects of the pre-existing conditions and subsequent injuries; it was solely the result of the pre-existing conditions. On appeal, Bybee contends that the Commission erred in several respects.

## A. Application Of *Garcia v. J.R. Simplot Co.*

■ Bybee first contends that the Commission erred in its application of the "but for" test articulated in *Garcia v. J.R. Simplot Co.*, 115 Idaho 966, 772 P.2d 173 (1989). In *Garcia*, the ISIF asserted that the claimant's subsequent industrial injury would have rendered her totally disabled by itself. Therefore, the injury did not combine with the pre-existing impairment to result in the total disability as required by I.C. § 72–332(1). *Id.* at 970, 772 P.2d at 177. On appeal, we held that to satisfy the "combined effects" requirement in § 72–332(1), a claimant must show that but for the pre-existing impairments, she would not have been totally permanently disabled. *Id.* See also *Selzler v. Industrial Special Indem. Fund*, 124 Idaho 144, 857 P.2d 623 (1993).

In the present case, the Commission recognized that this situation is different from *Garcia* in that it is undisputed that Bybee's subsequent industrial injuries would not have resulted in total disability by themselves. Rather, the ISIF contends that the *pre-existing impairment* alone resulted in her total disability. However, the Commission agreed with ISIF's assertion that the "but for" test must "work both ways." It concluded that in light of the "combined effects" requirement in § 72–332(1), a claimant seeking to establish ISIF liability must also prove that the disability would not have been total but for the industrial injury. Bybee appears to contend that this formulation of the *Garcia* rule is fatally flawed because it does not account for a case where an industrial injury accelerates pre-existing impairments. According to Bybee, in such a case, it cannot be said that total disability would not have occurred but for the industrial injury since it would have eventually resulted from the pre-existing impairment alone.

■ Bybee's contentions are misguided. The Commission did not base its determination on any finding that Bybee would eventually become totally permanently disabled by operation of the pre-existing impairments, but on the finding that she was, *at the time of the injuries*, already an odd-lot worker. Moreover, given the requirement in § 72–332(1) that the pre-existing impairment and

subsequent injury combine to result in total disability, it is implicit in the *Garcia* test that the relevant point in time is the point at which the injury occurs. Stated more specifically, the test is whether, but for the industrial injury, the worker would have been totally and permanently disabled immediately following the occurrence of that injury. This statement of the rule encompasses both the combination scenario where each element contributes to the total disability, and the case where the subsequent injury accelerates and aggravates the pre-existing impairment. For these reasons, we conclude that the Commission did not err in its application of *Garcia* in this case.

## B. Applicability Of The Odd–Lot Doctrine

 We have long held that the term "total disability" as used in the worker's compensation statutes is not to be interpreted literally:

> [B]y total disability [it] is not meant that the injured person must be absolutely helpless or entirely unable to do anything worthy of compensation. An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist may well be classified as totally disabled.

*Arnold v. Splendid Bakery,* 88 Idaho 455, 463, 401 P.2d 271, 276 (1965) (citing *Crawford v. Nielson,* 78 Idaho 526, 307 P.2d 229 (1957); *Endicott v. Potlatch Forests,* 69 Idaho 450, 208 P.2d 803 (1949)). This expanded definition of the term "total disability" is referred to as the odd-lot doctrine. *See Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977). Bybee contends that the Commission erred in applying this doctrine to conclude that she was totally permanently disabled prior to the 1991 industrial injuries since according to her, the doctrine cannot be asserted by the ISIF as a defense.

 In utilizing specific terms in a statute, it must be presumed, unless indicated otherwise, that the legislature intended those terms to be interpreted in accordance with existing judicial decisions. *E.g., State v. Jennings,* 95 Idaho 724, 518 P.2d 1186 (1974); *C. Forsman Real Estate Co. v. Hatch,* 97 Idaho 511, 547 P.2d 1116 (1976). As stated above, we have long interpreted the term "total disability" to include odd-lot workers. Since the legislature did not except this category of workers from the requirement in § 72–332(1) that the "total and permanent disability" result from a combination of pre-existing impairment and industrial injury, it must have intended the doctrine to apply in this circumstance. This conclusion is directly supported by our recent decision in *Hamilton v. Ted Beamis Logging & Constr.,* 127 Idaho 221, 899 P.2d 434 (1995).

In *Hamilton,* a claimant with significant pre-existing physical impairments was seriously injured while working as a sawyer. He filed worker's compensation claims against both the ISIF and his employer contending that he was totally permanently disabled. Although Hamilton settled with the ISIF, the employer contended that he was totally disabled prior to the second injury. The Commission found that Hamilton was totally permanently disabled under the odd-lot doctrine prior to the second injury. However, it nonetheless awarded benefits against the employer for the amount of disability stemming from the second injury pursuant to the formula set forth in *Carey v. Clearwater County Rd. Dep't,* 107 Idaho 109, 686 P.2d 54 (1984).

On appeal we noted that the *Carey* formula is the means used to apportion liability for disability in excess of impairment between the ISIF and the employer under I.C. § 72–332(1). However, we concluded that the formula is inapplicable when the pre-existing impairment does not combine with the subsequent injury to result in total disability. *Id.* at 224–25, 899 P.2d at 437–38. In that case there was no question that pre-existing conditions did not combine with the subsequent injury since "Hamilton was already totally and permanently disabled [pursuant to the odd-lot doctrine] coming into the second injury." *Id.* at 225, 899 P.2d at 438.

This case, like *Hamilton,* presents the question of whether liability can be apportioned via § 72–332(1) where there has been a finding that the claimant was totally permanently disabled prior to the occurrence of the industrial injuries. For precisely the same reason that the *Carey* formula was inapplicable in *Hamilton,* it is also inapplicable in this case; assuming the finding of odd-lot status is supported by the record, Bybee was already totally permanently disabled coming into the subsequent injuries. Thus, the real question is whether the Commission's finding that Bybee was odd-lot totally and permanently disabled prior to the 1991 injuries is supported by the record.

### C. Whether The Finding That Bybee Was Odd–Lot Prior To Her Industrial Injuries Is Supported By The Record

 Whether a claimant is an odd-lot worker is a factual determination. *E.g., Rost v. J.R. Simplot Co.,* 106 Idaho 444, 445, 680 P.2d 866, 867 (1984). As such, it will not be overturned on appeal when supported by substantial and competent, though conflicting, evidence. *See, e.g., Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977). *See also* I.C. § 72–732. In the typical case involving the application of the odd-lot doctrine, the claimant asserts odd-lot status as a means of establishing ISIF liability. In the present case, however, the ISIF seeks to benefit from odd-lot status. Because this case is somewhat unusual, we will take this opportunity to clarify the analytical framework.

### 1. Framework

 In all cases in which a claimant seeks to establish ISIF liability, I.C. § 72–332(1) places the initial burden on that party to establish that the pre-existing impairment

and the subsequent injuries in some way combined to result in total permanent disability. *Garcia,* 115 Idaho at 968, 772 P.2d at 175. As stated above, this requirement is not met if the total permanent disability predates the industrial injury. Therefore, the claimant in this type of case must presumptively establish that she is not an odd-lot worker, *ie.* that regular and continuous employment is available to her. A claimant will be able to do this simply by showing that she was working regularly at a job at the time of injury.[1]

 Once the claimant makes her initial showing, the ISIF must establish that she was in fact an odd-lot worker even though employed at that time. To do so, it must show that the claimant's actual employment was due to "a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on [her] part." *Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977). If the ISIF succeeds in showing that the actual employment was due to such unusual circumstances, that merely establishes that employment is irrelevant for purposes of the odd-lot doctrine. *See Crawford v. Nielson,* 78 Idaho 526, 307 P.2d 229 (1957) (because odd-lot workers are by definition *not* absolutely helpless, the mere fact of actual employment is not conclusive as to question of total permanent disability). Stated differently, the odd-lot doctrine is defined in terms of whether there is *any* employment regularly and continuously available to a claimant. *Cf. Gordon v. West,* 103 Idaho 100, 104–05, 645 P.2d 334, 338–39 (1982) (claimant must do more than show he cannot perform his previous type of employment to establish odd-lot status; he must show that there is *no* suitable occupation available). Consequently, the ISIF must also show that in light of the claimant's pre-existing condition, the

---

1. Bybee asserts that it is unfair to require an "unsuspecting" claimant in this type of case to make an initial showing that she is not an odd-lot worker. We do not agree. The plain language of I.C. § 72–332(1) puts claimants on notice that they will be required to establish that the total permanent disability is the result of the "com-

bined effects" of pre-existing conditions and subsequent industrial injuries. Moreover, the initial burden placed on the claimant is not difficult to satisfy since this type of case will arise only when the claimant is employed at *some* job at the time of the injury.

search for other suitable employment would have been futile. *See Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 153, 795 P.2d 312, 315 (1990) (citing *Huerta v. School Dist. No. 431*, 116 Idaho 43, 773 P.2d 1130 (1989)).

### 2. Application

■ In the present case, Bybee established that she was regularly employed at the time of the accidents. However, the Commission found that her employment with the Department of Parks was "essentially the equivalent of work provided by a sympathetic employer or friend." We conclude that this finding is supported by the record. The ISIF produced a job description containing a list of the duties that the caretaker job entailed. Although Bybee contends that this is not a listing of the duties actually expected of her, this assertion contradicts the very title of the document: "Work sheet for goals and objectives *for Lola Bybee* for the summer of 1991." It is undisputed that Bybee did not perform all of the duties listed. Further, there is substantial evidence that Bybee was performing no more than light duty work in a job classified as medium duty, and that even this was beyond her diminished abilities.

■ There is also substantial evidence that any search by Bybee for continuous non-sheltered employment would have been futile. In determining whether a claimant is unable to obtain regular employment, *ie.* is "totally disabled," consideration must be given to (1) the medical factor of permanent impairment and (2) pertinent non-medical factors set forth in I.C. § 72–430. I.C. § 72–425; *Paulson v. Idaho Forest Indus., Inc.*, 99 Idaho 896, 904, 591 P.2d 143, 151 (1979). Bybee had a cumulative impairment rating of approximately fifty-two percent of the whole person coming into the 1991 injuries. We conclude that this level of physical impairment coupled with the non-medical factors of age, limited education, limited work experience, and lack of transferable skills, provides adequate support for the finding that Bybee was odd-lot totally permanently disabled pri-

or to the 1991 injuries. For this reason, the total permanent disability did not result from the combined effects of pre-existing impairments and the 1991 injuries, and the decision of the Industrial Commission is affirmed.

McDEVITT, C.J., and JOHNSON, J., concur.

SILAK, Justice, dissenting.

I concur in the Court's opinion, except that I respectfully dissent to Part III(C)(2), which concludes that substantial, competent evidence supports the Industrial Commission's determination that Bybee was employed by a sympathetic employer. The record contains no substantial, competent evidence that Bybee was employed because the Idaho Department of Parks and Recreation was a sympathetic employer.

The Court's opinion admits Bybee presumptively established she was not an odd-lot worker by showing that she was regularly employed at the time of the accidents. After such a showing, the ISIF:

> must establish that she was in fact an odd-lot worker even though employed at that time. To do so, it must show that the claimant's actual employment was due to "a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on [her] part."

Opinion at 1206 (quoting *Lyons v. Industrial Special Indem. Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977)).

The Commission found that Bybee was not required to perform all the duties on the "goals and objectives" sheet for the summer of 1991 and that she was performing no more than a light duty task in a job classified by the Dictionary of Occupational Titles as medium duty. From these findings the Commission concluded, and now the Court upholds, that Bybee was employed by a sympathetic employer. This conclusion was made despite the fact that there was no testimony from anyone who had first-hand

knowledge about the nature of Bybee's employment relationship with the Department of Parks. Although there was evidence that Bybee did not perform all the duties on the "goals and objectives" sheet, there was no evidence that she did not perform these duties because of a sympathetic employer. In fact, Bybee testified that one of the listed tasks was actually the responsibility of the Highway Department.

The ISIF's expert testified as to her opinion "that only with a sympathetic employer would she [Bybee] be employed." However, on cross-examination the following exchange between Bybee's attorney and the ISIF's expert occurred:

Q. In your evaluation or review of Mrs. Bybee's case, is there any indication in your records at all that show she was having—that she was not performing the job that she was supposed to do at the Parks Department?

A. I do not have any information on that. I've had no direct contact with her supervisor.

The purely speculative testimony of an expert regarding the attitude of an employer with whom she has had no direct contact lacked foundation and cannot be said to be substantial evidence that Bybee was employed by a sympathetic employer. *See, Gubler v. Boe,* 120 Idaho 294, 298, 815 P.2d 1034, 1038 (1991) (trial court properly excluded testimony of expert who had no personal knowledge of the plaintiff's condition); *Petersen v. Parry,* 92 Idaho 647, 652, 448 P.2d 653, 658 (1968) (verdict cannot rest on conjecture). *See also Ryan v. Beisner,* 123 Idaho 42, 46, 844 P.2d 24, 28 (Ct.App.1992) (expert testimony which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the finder of fact and is inadmissible as evidence). As the ISIF expert stated on cross-examination, there is no evidence in the record to show that Bybee was not doing the job expected of her at the Department of Parks.

Bybee's case stands in sharp contrast to our recent decision in *Hamilton v. Ted Beamis Logging & Constr.,* 127 Idaho 221, 899 P.2d 434 (1995), where this Court upheld an Industrial Commission determination that the claimant, Hamilton, was an odd-lot worker and held his position because of a sympathetic employer. The odd-lot finding in *Hamilton* was supported by testimony from Hamilton's employer, Beamis, who testified he would not have hired Hamilton on a regular basis because he was unable to work in the steep and uneven terrain where the logging work was performed. *Id.* 127 Idaho at 225, 899 P.2d at 438. Additionally, Beamis made special arrangements for Hamilton such as restricting his work to level ground and allowing him to take more breaks. Finally, there also was evidence that Beamis "only hired Hamilton because they were friends and Beamis was attempting to help Hamilton out." *Id.* Even with such a sympathetic employer, Hamilton lasted only four days before leaving the position.

Contrary to *Hamilton,* there is no evidence whatsoever from Bybee's employer regarding the nature of her performance. The record does show that Bybee was employed by the Department of Parks for six months. During that time she earned $6.24 an hour, working eight hour days. She testified that she washed the windows, floors, mirrors, doors, sinks, toilets, and drinking fountains of the park's restrooms daily. Bybee also stocked the soap dispensers, toilet tissue dispensers, and the supply room. Additionally, she cleaned the roadways, parking lots, picnic areas and shelters as well as emptied the garbage cans throughout the park. The only tasks that Bybee did not perform were pruning the trees and bushes, mowing and irrigating the grounds, inspecting and replacing signs, and ensuring that the tools and equipment were kept in top working order. As noted above, at least one of the listed tasks, sign maintenance and repair, was actually the responsibility of the Highway Department. Overall, there was testimony that Bybee was performing in a light duty capacity and handling the job adequately.

In summary, the fact that Bybee did not perform all the tasks on the sheet defining

her goals and objectives for the summer of 1991, or that she was performing in a light duty capacity, does not equate to evidence that her employment was the result of a sympathetic employer or that she was not adequately performing her job at the Department of Parks. The testimony of the expert lacked foundation as to the sympathetic employer issue. There was no evidence from the employer regarding Bybee's actual job requirements and her employment evaluations. I cannot conclude that the ISIF carried its burden of rebutting the presumption that Bybee was not an odd-lot worker by showing that Bybee held her position as the result of the sympathy of the Department of Parks.

SCHROEDER, J., concurs.