# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51719

|  |  |  |
|---|---|---|
| DOUGLAS WESTMAN, | ) | |
| | ) | |
| Claimant-Appellant, | ) | **Boise, June 2025 Term** |
| | ) | |
| v. | ) | **Opinion Filed: August 20, 2025** |
| | ) | |
| STATE OF IDAHO, INDUSTRIAL SPECIAL INDEMNITY FUND, | ) ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The Commission's decision is <u>affirmed</u>.

Curtis Porter & Adams Law PLLC, Idaho Falls, for Appellant, Doulas Westman. Andrew Adams argued.

Augustine Law Offices PLLC, Boise, for Respondent, State of Idaho Industrial Special Indemnity Fund. Paul Augustine argued.

_____

MEYER, Justice.

This worker's compensation appeal concerns whether the State of Idaho, Industrial Special Indemnity Fund (ISIF) is liable for benefits due to Douglas Westman's total and permanent disability following a 2015 meat grinder accident. While all parties agreed that Westman was totally and permanently disabled under the odd-lot doctrine, the dispute centered on whether Westman's pre-existing impairment, combined with the meat grinder injuries, invoked ISIF liability under Idaho Code section 72-332. Westman argued that his pre-existing impairments contributed to his total and permanent disability, thus implicating ISIF's liability. The Idaho Industrial Commission (Commission) disagreed, concluding that the meat grinder injuries alone rendered Westman totally and permanently disabled because his other injuries had not prevented him from working full-time in heavy-duty jobs before the 2015 accident. Westman appealed. We affirm the Commission's decision because there is substantial and competent evidence to support its finding that Westman's total and permanent disability resulted solely from the 2015 meat grinder accident.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Westman is a third-generation meat cutter with over 30 years of experience, having begun as an apprentice with his father and progressing to journeyman status. Throughout his career, Westman sustained numerous injuries. In 1999, while working as a meat cutter in Montana, Westman was injured when a stack of frozen turkeys fell on him, leading to an acute abdominal hernia, thoracic spine injuries, and right shoulder issues. Consequently, he underwent multiple surgeries, including two for the hernia and a thoracic microdiscectomy for a herniated disc. Despite these challenges, he returned to work full-time as a meat cutter the following year.

Seven years later, Westman fell when he lifted a heavy box while working as a meat cutter in a Utah grocery store. The fall caused a left knee meniscus tear and a low back injury. He received wide-ranging treatments, including steroid injections in his back, carpal tunnel release surgery, forearm muscle herniation repair in both arms, and left knee surgery. The following June, Westman received a six percent whole person impairment rating, which included one percent for the left knee, three percent for the sacroiliac joint, and two percent for the forearm muscle herniations. He was not given an impairment rating for his right shoulder or bilateral carpel tunnel releases. His physician advised him against returning to work as a meat cutter.

In 2012, Westman sustained further injuries in a conveyor belt accident that crushed his left wrist and aggravated his previous lumbar spine injury. The injuries from this accident were privately settled with Westman's employer and not handled as a worker's compensation claim. After recovery, the treating physicians did not impose restrictions on Westman. Despite residual pain, the physician reported "excellent grip strength" in October 2014.

Westman's final work-related injury, which is the subject of this appeal, occurred in the summer of 2015 while working for Great Western Foods. Westman suffered a "severe injury" to his hand during an industrial accident when his right hand was caught in a meat grinder. After the incident, he underwent multiple surgeries but ultimately lost part of his palm and all fingers except his thumb. Westman's treatment involved extensive medical procedures, including a revision surgery several years later to enhance prosthetic function. He struggled with the prosthetics and was restricted from lifting by his treating doctor, who assigned him a 52 percent impairment rating for his right upper extremity. In addition, Westman experienced right shoulder pain that worsened after the accident, which led to surgeries and a six percent disability rating, although no shoulder restrictions were imposed afterward. In December 2015, he was diagnosed with complex regional

pain syndrome and received various pain management treatments, including a permanent spinal cord stimulator implant in May 2019 to help reduce pain.

In August 2021, Westman submitted a workers' compensation claim against ISIF with the Commission. Before this, Westman had settled the indemnity portion of his worker's compensation case against his employer, Great Western Foods, in April 2017. In May 2023, a Referee appointed by the Commission conducted a hearing. The Referee considered as evidence the following: the Commission file, joint exhibits, Westman's hearing testimony, and post-hearing depositions from vocational rehabilitation experts Delyn Porter and Barbara Nelson. The main issue was whether Westman's pre-existing impairments, combined with his subsequent injuries, caused total and permanent disability, thus implicating ISIF's liability.

The Referee issued findings of fact, conclusions of law, and recommendation. The Referee first determined that Westman was totally and permanently disabled as an odd-lot worker. Then the Referee found that Westman's thoracic spine, right shoulder, left knee, low back, bilateral carpal tunnel syndrome, hernias, left wrist, and right knee injuries were impairments that existed and were manifest before the 2015 meat grinder accident. However, only Westman's left wrist injury was found to be a subjective hindrance because the other injuries had not prevented him from working full-time in heavy-duty jobs before the 2015 accident. Finally, the Referee found that the meat grinder accident alone rendered Westman totally and permanently disabled because his left wrist injury did not contribute to or combine with the injuries from the meat grinder accident to cause his disability. Based on this conclusion, the apportionment issue, explained in *Carey v. Clearwater County Road Department*, 107 Idaho 109, 686 P.2d 54 (1984), became moot.

The Commission agreed and adopted the Referee's findings of fact, conclusions of law, and recommendation. Westman timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

When this Court reviews Industrial Commission decisions, we exercise free review over questions of law. *Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 755, 302 P.3d 718, 723 (2013); *see* I.C. § 72-732. Our review of the Commission's findings of fact is limited to "whether the Commission's factual findings are supported by substantial and competent evidence." I.C. § 72-732; *Hiatt v. Health Care Idaho Credit Union*, 166 Idaho 286, 290, 458 P.3d 155, 159 (2020) (quoting *Harper v. Idaho Dep't of Lab.*, 161 Idaho 114, 116, 384 P.3d 361, 363 (2016)). "Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence

will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Id.* (quoting *Ehrlich v. DelRay Maughan, M.D., P.L.L.C.*, 165 Idaho 80, 83, 438 P.3d 777, 780 (2019). All facts and inferences are viewed in the light most favorable to the party who prevailed before the Commission, in this case, ISIF. *Thrall v. St. Luke's Reg'l Med. Ctr.*, 157 Idaho 944, 947, 342 P.3d 656, 659 (2015).

This Court, however, is not bound by the Commission's conclusions of law. *Hernandez v. Triple Ell Transp., Inc.*, 145 Idaho 37, 39–40, 175 P.3d 199, 201–02 (2007). In other words, we must set aside the Commission's order if the Commission failed to correctly apply the law to the evidence. *Id.*

### III. ANALYSIS

Westman asks this Court to vacate the Commission's order and remand the case for further proceedings. There is no dispute that Westman is totally and permanently disabled under the "odd lot" doctrine. "An odd-lot worker is one who, as a result of the injury, is impaired to an extent that his or her ability to perform services is so limited in quality, quantity, or dependability that no reasonable market for his or her services exists." *Lethrud v. Indus. Special Indem. Fund*, 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995) (quoting *Ragan v. Kenaston Corp.*, 126 Idaho 152, 155, 879 P.2d 1085, 1088 (1994)). Nor do the parties contest the Commission's findings that Westman's thoracic spine, right shoulder, left knee, low back, bilateral carpal tunnel syndrome, hernias, left wrist, and right knee injuries were pre-existing impairments that were manifest before his 2015 industrial accident.

Westman challenges the Commission's finding that the meat grinder accident, standing alone, rendered him totally and permanently disabled. He contends that the Commission erred as a matter of law by denying compensation from ISIF for the portion of his disability attributable to his pre-existing impairments, particularly his left wrist injury. Thus, the sole issue before this Court is whether substantial and competent evidence supports the Commission's finding that ISIF is not liable for any portion of Westman's total and permanent disability.

ISIF was established to encourage the employment of individuals with pre-existing impairments by shielding employers from liability for the full extent of a total and permanent disability where part of that disability is due to pre-existing conditions. *Stanley v. Indus. Special Indem. Fund*, 168 Idaho 183, 188, 481 P.3d 731, 736 (2021) (citing *Tagg v. Indus. Special Indem.*

4

*Fund*, 123 Idaho 95, 97, 844 P.2d 1345, 1347 (1993)). In 1971, Idaho amended its workers' compensation laws to expand ISIF's liability through Idaho Code section 72-332. *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 916–17, 772 P.2d 119, 123–24 (1989).

Under section 72-332, a claimant with a disability "is entitled to look to ISIF for income benefits attributable to a permanent pre-existing impairment." *Tagg*, 123 Idaho at 97, 844 P.2d at 1347 (first citing I.C. § 72-332; and then citing *Horton*, 115 Idaho 912, 772 P.2d 119). When a claimant has a pre-existing permanent physical impairment and sustains a subsequent compensable injury or occupational disease, and the *combined effects* of the pre-existing impairment and the subsequent injury render the claimant totally and permanently disabled, the claimant may apportion total and permanent disability benefits between the claimant's employer and ISIF. *See* I.C. § 72-332(1). The employer is liable only for the portion of disability attributable to the subsequent injury, and ISIF is responsible for the remainder. *See id.* Idaho Code section 72-332 provides:

> (1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease *or* by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, . . . and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.
>
> (2) "Permanent physical impairment" is as defined in section 72-422, Idaho Code, provided, however, as used in this section such *impairment must be* a permanent condition, whether congenital or due to injury or disease, *of such seriousness as to constitute a hindrance or obstacle to obtaining employment* or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment.

I.C. § 72-332 (emphasis added).

After the Commission determines a claimant is totally and permanently disabled, the claimant seeking to obtain contribution from ISIF must establish:

(1) the claimant suffered from a pre-existing impairment;

(2) the pre-existing impairment was manifest;

(3) the pre-existing impairment was a subjective hindrance to employment; and

(4) the combined effects of the pre-existing impairment and the subsequent injury or occupational disease resulted in total and permanent disability; *or* the subsequent injury or occupational disease aggravated and accelerated the pre-existing impairment to cause total and permanent disability.

*Aguilar v. Indus. Special Indem. Fund*, 164 Idaho 893, 902, 436 P.3d 1242, 1251 (2019) (citation modified) (citing I.C. § 72-332).

This case turns on the fourth element. Westman argues that because the Commission determined that his left wrist injury was a subjective hindrance that existed prior to the 2015 industrial accident, that injury must be included in the total disability analysis, thereby triggering ISIF liability. ISIF responds that certain injuries, such as Westman's 2015 injury to his hand from the meat grinder accident, can be so severe that they independently cause total disability, even in the presence of pre-existing conditions.

There are two methods to establish the fourth element: "[o]ne method of proving the ISIF's liability involves the combined effects test . . . ; the other focuses on the aggravation and acceleration of a pre-existing impairment as a result of the second industrial accident." *Id.* at 902, 436 P.3d at 1251. "The 'but for' test 'encompasses both the combination [method] where each element contributes to the total disability,'" and the method where the subsequent injury aggravates and accelerates the preexisting impairment. *Id.* (quoting *Bybee v. Indus. Special Indem. Fund*, 129 Idaho 76, 81, 921 P.2d 1200, 1205 (1996)). Stated another way, "the test is whether, but for the industrial injury, the worker would have been totally and permanently disabled . . . ." *Bybee*, 129 Idaho at 81, 921 P.2d at 1205.

In *Eckhart v. Industrial Special Indemnity Fund*, the claimant asserted a claim of total and permanent disability, which he attributed to the combination of pre-existing impairments: a work-related back injury and non-medical factors. 133 Idaho 260, 261, 985 P.2d 685, 686 (1999). The Commission determined that the claimant's total and permanent disability was caused solely by his final back injury after he fell down some stairs. *Id.* at 262–64, 985 P.2d at 687–89. This Court upheld the Commission's decision that ISIF was not liable because substantial and competent evidence supported the Commission's finding that the employee was totally and permanently disabled solely because of his back injury and not from pre-existing arm and eye injuries. *Id.*; *see also Hope v. Indus. Special Indem. Fund*, 157 Idaho 567, 572–73, 338 P.3d 546, 551–52 (2014) (ISIF was not liable because substantial and competent evidence supported finding that employee

6

was totally and permanently disabled solely from a later shoulder injury without contribution from an earlier shoulder injury), *abrogated on other grounds by Aguilar*, 164 Idaho at 902, 436 P.3d at 1251; *Andrews v. Indus. Special Indem. Fund*, 162 Idaho 156, 159, 395 P.3d 375, 378 (2017) (ISIF was not liable because substantial and competent evidence supported finding that the employee was totally and permanently disabled solely from a back injury after the claimant fell from a ladder, without contribution from prior feet, knees, lower back, shoulders, and neck injuries).

Here, the Commission found that Westman's total and permanent disability was caused solely by the 2015 meat grinder accident. The Commission determined that Westman's pre-existing left wrist injury did not contribute to, nor combine with, the 2015 injuries to render him totally and permanently disabled. The Commission explained:

> [Westman's] restrictions from the 2015 injury are so onerous that there are no jobs available to him regardless of his left wrist impairment. There is no persuasive evidence [Westman] had a pre-existing standing restriction. [Westman's] last injury was a traumatic partial amputation of his dominant right hand. [Westman] can no longer lift more than five pounds with his dominant right hand. [Westman], after more than seven years of effort, has been unable to increase the function of his right hand with multiple prosthetics, surgeries, pain medications, and a spinal cord stimulator. [Westman] is on narcotic pain medications for both his hands and his low back and will not drive while those medications are in effect.

To reach its conclusion, the Commission, as the factfinder, is free to determine the weight to be given to the opinions of the vocational rehabilitation experts. *See Hiatt v. Health Care Idaho Credit Union*, 166 Idaho 286, 290, 458 P.3d 155, 159 (2020) (citation omitted). Delyn Porter, testifying for Westman, initially evaluated Westman in 2016 based solely on records concerning the 2015 injuries. At the time, Porter was unaware of Westman's pre-existing conditions and relied heavily on Westman's self-reported medical history, in which Westman denied having prior impairments or restrictions. Based on that limited information, Porter concluded that Westman was no longer competitively employable. In his post-hearing deposition in 2023, after reviewing additional evidence, Porter reaffirmed his conclusion that Westman was so limited by his disability, age, skills, and education that he could not reasonably be expected to compete for jobs in any well-established labor market. Porter testified that Westman had pre-existing impairments to the right shoulder, thoracic back, the cervical spine, and the left wrist. Westman's expert considered Westman's shoe lifts, back brace, knee braces, ankle braces, and wrist braces subjective hindrances to employment. He described the prosthetic hand as functionally ineffective and underscored how the limitations imposed by the 2015 injuries, including severe lifting restrictions,

7

chronic pain, and loss of dexterity, dropped Westman below even sedentary exertional levels, rendering him unemployable in any competitive labor market.

By contrast, ISIF's expert, Barbara Nelson, conducted a comprehensive evaluation that considered Westman's full medical and employment history. Nelson agreed that Westman was totally and permanently disabled but attributed that condition solely to the 2015 accident. She emphasized Westman's consistent return to heavy-duty employment following prior injuries and the absence of documented restrictions or functional limitations before 2015. In her view, Westman's earlier conditions did not rise to the level of a subjective hindrance. Instead, she pointed to the severity of the 2015 injuries, chronic pain, failed prosthetic use, and functional loss in his dominant hand as the sole causes of his unemployability.

"This Court does not re-weigh the evidence or consider whether [we] would have reached a different conclusion from the evidence presented." *Wilson v. Conagra Foods Lamb Weston*, 160 Idaho 66, 72, 368 P.3d 1009, 1015 (2016) (quoting *Clark v. Shari's Mgmt. Corp.*, 155 Idaho 576, 579, 314 P.3d 631, 634 (2013)). While both vocational experts agreed that Westman was no longer employable, their opinions diverged on the cause of this total disability. Porter supported the claim that pre-existing impairments, although not previously disclosed to him, were "subjective hindrances" that contributed to Westman's inability to work following the 2015 accident. On the other hand, Nelson concluded that (1) the pre-existing conditions had no material impact on Westman's employability before 2015 and (2) the meat grinder accident, with its cascading medical complications, was singularly responsible for rendering him totally and permanently disabled. This divergence of opinions was at the heart of the evidentiary dispute to determine ISIF's liability. The Commission ultimately found Nelson's opinion more persuasive and adopted it.

To establish ISIF liability, Westman bore the burden of proving that the combined effects of his pre-existing impairment and the subsequent injury resulted in total and permanent disability, *or* the subsequent injury aggravated and accelerated his pre-existing impairment to cause total and permanent disability. *Aguilar*, 164 Idaho at 902, 436 P.3d at 1251 (citing I.C. § 72-332). The burden required more than showing the presence of a pre-existing injury that was a subjective hindrance to employment; it required demonstrating that the 2015 injuries, in isolation, would not have rendered him totally and permanently disabled. In essence, Westman needed to show that his pre-existing impairment, specifically his left wrist injury, was a subjective hindrance to

employment *and* that, in combination with the 2015 meat grinder injuries, he became totally and permanently disabled. *See Bybee*, 129 Idaho at 80, 921 P.2d at 1204.

The Commission, acting as the trier of fact, weighed the competing expert testimony. While acknowledging the existence of prior injuries, including that the left wrist injury was a subjective hindrance to employment, the Commission found that the prior injuries neither restricted his work nor combined with the 2015 injuries in a manner that contributed to his ultimate unemployability. The Commission credited Nelson's testimony and vocational evaluation report, which opined:

> It is my strong professional opinion that there simply is no combination in this case. The profound vocational effects of his catastrophic dominant hand partial amputation and residual chronic pain syndrome alone, in combination with the aforementioned non-medical factors, render him unemployable and do not combine with any of his pre-injury conditions. His disability would have been total without any of these pre-existing conditions. The chronic debilitating symptoms from the amputation and his failed trial with the myoelectric hand are well documented from various sources in the record.

Nelson concluded that Westman's complete loss of functional use in his dominant hand, coupled with unrelenting pain and failed prosthetics, were so disabling that those injuries independently precluded any gainful employment.

The testimony and report of vocational rehabilitation expert Nelson represents substantial and competent evidence to support the Commission's finding, notwithstanding the presence of a conflicting opinion. However, it was the Commission's responsibility to weigh the conflicting opinions—not this Court's. Accordingly, we affirm the Commission's determination that Westman's total and permanent disability resulted solely from the 2015 meat grinder accident and that ISIF is not liable.

Neither party requested attorney fees on appeal. As the prevailing party, ISIF is entitled to costs as a matter of course under Rule 40(a) of the Idaho Appellate Rules.

## IV. CONCLUSION

We affirm the Commission's order. We award costs on appeal to ISIF.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.