**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45581**

ARTURO AGUILAR, )
)
    **Claimant-Appellant,** )
) **Boise, September 2018 Term**
**v.** )
) **Filed: March 14, 2019**
STATE OF IDAHO, INDUSTRIAL )
SPECIAL INDEMNITY FUND, ) **Karel A. Lehrman, Clerk**
)
    **Defendant-Respondent.** )
———————————————————— ) `

Appeal from the Industrial Commission of the State of Idaho. Chairman Thomas E. Limbaugh presiding.

The order of the Industrial Commission is <u>vacated and remanded</u>.

Goicoechea Law Offices, Chtd., Boise, for appellant. Daniel J. Luker argued.

Ludwig Shoufler Miller Johnson, LLP, Boise, for respondent. Daniel A. Miller argued.

————————————

STEGNER, Justice.

    Arturo Aguilar (Aguilar) appeals from the Findings of Fact and Conclusions of Law and Order of the Idaho Industrial Commission in which it concluded the Idaho Industrial Special Indemnity Fund (ISIF) was not liable to him for worker's compensation benefits. The Industrial Commission (the Commission) found that Aguilar was totally and permanently disabled and that he had pre-existing impairments that constituted subjective hindrances to his employment. However, the Commission rejected Aguilar's claim that the ISIF was liable for benefits. We vacate and remand.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Aguilar was born in Mexico. Aguilar speaks limited English and testified through a translator at his hearing. He can read Spanish but not English. Aguilar, in the words of the Commission, is "a Mexican National and has resided illegally in the United States since approximately 1986." He completed the fifth grade in Mexico and does not appear to have had any additional schooling. Aguilar is married. The couple has two daughters, the eldest of whom has cerebral palsy and is seriously disabled.[1]

Aguilar primarily worked as a manual laborer, including agricultural work, ranch work, and, for the last fifteen to sixteen years prior to the injury giving rise to this claim, concrete and cement work. During this latter line of employment, Aguilar sustained multiple back injuries. In 1999, Aguilar injured his back in a vehicular accident when the company vehicle in which he was riding was rear-ended. He subsequently filed a worker's compensation claim for the injuries he sustained. In 2002, Aguilar strained his back removing a stuck jackhammer. On December 11, 2006, Aguilar suffered another low back injury while screeding concrete.[2] Following this latter injury, Aguilar was diagnosed with degenerative disc disease and a disc herniation at the L4-5 level of his spine. He was treated with epidural steroid injections and anti-inflammatory medications without significant relief. Because he was unable to get his pain to abate, he underwent back surgery, which was performed by Miers Johnson, III, M.D. The surgery resulted in the fusion of the L4-5 level of Aguilar's spine. (This surgery will be referred to as the L4-5 fusion or first surgery.)

After this first surgery, on July 10, 2008, a Functional Capacity Evaluation (FCE) was performed, and Aguilar was given a light physical demand classification, which restricted him to occasionally lifting seventeen pounds. Although Dr. Johnson had previously imposed various work restrictions, on July 7, 2009, (almost a year following the FCE) he imposed a twenty-pound lifting limitation on Aguilar. This restriction was related to Aguilar's diagnosis of "degeneration

---

[1] The relevance of his daughter's disability is that prior to Aguilar's injury of October 3, 2011, he was capable of lifting and carrying his daughter who weighs between 105 and 110 pounds. Since the injury of October 3, 2011, he claims he has been unable to lift or carry his daughter.

[2] Screeding concrete is the process of flattening and smoothing wet concrete.

of lumbar intervertebral disk." Notwithstanding his medical restrictions, Aguilar testified at the hearing that he could lift and move his disabled daughter, once he recovered from the first surgery.

On August 21, 2008, Aguilar filed a second worker's compensation claim seeking benefits as a result of his injury in 2006 and the resulting surgery. Aguilar alleged he was totally and permanently disabled. On July 22, 2009, Aguilar entered into a Lump Sum Agreement with his two previous employers and the Idaho State Insurance Fund[3] to settle his worker's compensation claims for both the 1999 and 2006 accidents. The lump sum payment compensated Aguilar for "permanent partial lifetime disability." On August 5, 2009, the Industrial Commission approved the Lump Sum Agreement. The Agreement approved by the Commission awarded Aguilar benefits for less than total, permanent disability.

Aguilar claimed that his back felt fine as early as September 25, 2009, notwithstanding his earlier injuries and worker's compensation claims. On April 11, 2010, Aguilar began working part time for Gail Ansley at CA Bull Elk Ranch. Aguilar later took up full-time concrete work for Lowry Excavation and Concrete, Inc. (Lowry Excavation), on June 3, 2010.

On December 9, 2010, Aguilar hurt his lower back working at CA Bull Elk Ranch when he tripped and fell backwards while attempting to move a 55-gallon barrel. As a result, Aguilar was diagnosed as having sustained a "[l]umbar strain with sacral contusion." After conservative treatment, Brian Johns, M.D., discharged Aguilar on January 20, 2011, at "maximum medical improvement." Dr. Johns did not anticipate any permanent impairment, and *removed* a thirty-pound lifting restriction. Aguilar testified that he could still lift and move his disabled daughter after this injury. As a result of this injury in 2010, Aguilar filed a worker's compensation claim.

Aguilar hurt his lower back once again on October 3, 2011, while working for Lowry Excavation when he tried to lift a lodged jackhammer. (The injury of October 3, 2011, will be referred to as the second or subsequent injury.) Aguilar testified that the jackhammer weighed between eighty and ninety pounds. At the time of the injury, Aguilar experienced pain down both legs and into his feet.

---

[3] The State Insurance Fund insured both employers.

Following physical therapy and other conservative treatment that did not resolve Aguilar's pain, he underwent an MRI. In analyzing that study, Cameron Evans, M.D., stated that "[t]here is multilevel degenerative disk disease throughout the lumbar spine, worst at the L3-L4 level, above the fused segment." On January 25, 2012, Aguilar underwent an epidural steroid injection at L3-4 without significant relief. Consequently, on February 13, 2012, Samuel Jorgenson, M.D., "recommended surgical intervention in terms of an L3-L4 laminectomy, discectomy, and fusion." He also wrote "[t]he fusion is required since it is adjacent to an existing fusion and as a consequence of the expected increase stress at the L3-L4 level."

After the recommendation for surgery, the Idaho State Insurance Fund, Lowry Excavation's surety, sought a second opinion from David B. Verst, M.D. Following that independent medical exam, Dr. Verst recommended surgery but suggested that the 2011 jackhammer incident was not the reason Aguilar needed a second surgery.

Dr. Jorgenson disagreed with Dr. Verst's opinion that the second injury was not the cause of Aguilar's need for a second surgery. In spite of their initial disagreement, both doctors ultimately agreed that an underlying condition had been aggravated by the second injury and that compensable surgery was appropriate. Dr. Verst wrote "that the injury that occurred on 10/03/11 aggravated an underlying advanced degenerative condition." Dr. Jorgenson stated that Aguilar's "symptoms are best categorized [as] an aggravation of an existing pathology at the L3-L4 level."

On May 4, 2012, Aguilar filed his original worker's compensation complaint against Lowry Excavation and the State Insurance Fund. Shortly thereafter, on May 15, 2012, Dr. Jorgenson performed surgery on Aguilar. Dr. Jorgenson removed the implant at L4-5 and replaced it with a posterior lumbar interbody fusion and PEEK interbody cage, as well as pedicle screw instrumentations at L3, L4, and L5. (This surgery will be referred to as the second or subsequent surgery.) Following the second surgery, Aguilar continued to experience back and leg pain. Due to Aguilar's ongoing pain, multiple diagnostic images were taken and a CT myelogram of the lumbar spine was performed on November 19, 2012. That study found "mild to moderate degenerative changes" at the L2-3 level, adjacent to the extended fusion. The final impression noted in that study was "postoperative and degenerative change of the lumbar spine"

4

and L2-3 degenerative change. Aguilar also completed post-operative physical therapy and had epidural steroid injections with minimal to no improvement in his symptoms.

Aguilar was next involved in a car accident in December of 2012, and again saw Dr. Jorgenson due to increased back pain. Dr. Jorgenson, R. Tyler Frizzell, M.D., and Nancy Greenwald, M.D., all agreed that the car accident was not a substantial factor in Aguilar's symptoms and that his ongoing symptoms were a result of the second injury. In contrast, Kenneth Little, M.D., found that Aguilar's "aggravated back pain and new left leg radicular symptoms radiating into his calf" were due to the car accident. However, he also concluded Aguilar's "residual back pain and his left anterior thigh parathesis (without motor deficits) [we]re directly related to the October 3, 2011, industrial injury . . . ."

On July 12, 2013, Dr. Jorgenson wrote, "Mr. Aguilar is currently not working as a consequence of his ongoing symptoms. At this time, he is limited to light duty capacity only with alteration [sic] between standing and sitting with no significant bending, lifting, or twisting." In 2013, almost a year after the second surgery, Aguilar began attempting new lines of work. He tried three different jobs (landscaping, janitorial, and truck driving) but could not last more than a few hours at any of them. Aguilar testified that following the second injury he could no longer lift or move his daughter.

On January 17, 2014, Aguilar filed another worker's compensation claim, adding the ISIF as a defendant to his claims against Lowry Excavation and the State Insurance Fund. On July 22, 2015, the Commission held a hearing regarding Aguilar's claims against Lowry, the State Insurance Fund, and the ISIF. Aguilar was the only witness who testified.

On October 19, 2015, Aguilar, Lowry Excavation, Gail Ansley (Aguilar's employer at CA Bull Elk Ranch), and the State Insurance Fund[4] filed a Lump Sum Agreement to settle Aguilar's claims for his 2010 and 2011 industrial accidents. The ISIF was not a party to that agreement. On that same day, the Commission approved the Lump Sum Agreement and dismissed Aguilar's claims against all parties except the ISIF. Aguilar's claim against the ISIF continued with the taking of two post-hearing depositions of rehabilitation specialists, Delyn

---

[4] The State Insurance Fund was the surety for both Gail Ansley and Lowry Excavation.

Porter, M.A., and John Janzen, Ed.D. Following the depositions, the parties submitted post-hearing briefs. On October 13, 2017, the Commission issued its Findings of Fact, Conclusions of Law and Order (Commission's Order). In it, the Commission rejected Aguilar's claim against the ISIF.

In denying Aguilar's claim, the Commission drew a number of conclusions related to Aguilar's pre-existing impairments. First, the Commission found that Aguilar was totally and permanently disabled as of the hearing, as an "odd-lot" worker. The Commission also found that Aguilar had a number of pre-existing impairments that were manifest as of the injury of October 3, 2011. Those pre-existing impairments and their corresponding impairment ratings were as follows: lower back issues, 19%; hypertension, 17%; right eye deficit, 15%; depression, 5%; and diabetes, 10%. The Commission further found that Aguilar's hypertension, right eye deficit, and lower back issues were all subjective hindrances to his employability prior to the injury of October 3, 2011. Aguilar's depression and diabetes were not considered to be subjective hindrances to his employment.[5] Additionally, the Commission determined that the hypertension and right eye deficit were "vocationally irrelevant in view of [the] conclusion that [Aguilar's] low back limitations restrict him from all the jobs for which he is otherwise suited." Ultimately, the Commission found that Aguilar was rendered "totally and permanently disabled by virtue of his low back condition alone . . . ."

Finally, the Commission found that Aguilar's pre- and post-injury limitations had not changed, effectively deciding Aguilar was totally and permanently disabled prior to his second injury. The Commission also concluded Aguilar had failed to prove his pre-existing impairments combined with his subsequent injury to cause his total and permanent disability; therefore, the ISIF was not liable for any compensation and all other issues were moot.[6] Aguilar filed a timely appeal of the Commission's Order.

---

[5] At the conclusion of its Order, the Commission stated that Aguilar's "impairment for diabetes, hypertension and right eye vision loss **did** constitute subjective hindrance[s] to [Aguilar's] employment as of the date of the October 3, 2011 industrial accident." (Emphasis added.) This conclusion appears to be contradicted because the Commission's previous findings state that Aguilar's diabetes was not a subjective hindrance to his employment.

[6] The Commission originally identified the following issues as being presented, but ultimately determined they were rendered moot as a result of its final decision: (1) how disability should be apportioned if ISIF is found liable; (2)

6

## II. QUESTIONS ON APPEAL

1. Did the Commission apply the correct legal standard when it concluded Aguilar's limitations and restrictions did not materially change following his second injury?

2. Did the Commission apply the correct legal standard to analyze the "but for" causation test as set out in Idaho Code section 72-332?

3. Is either party entitled to attorney's fees on appeal?

## III. STANDARD OF REVIEW

"When reviewing a decision by the Industrial Commission, this Court exercises free review over the Commission's conclusions of law, but will not disturb the Commission's factual findings if they are supported by substantial and competent evidence." *Green v. Green*, 160 Idaho 275, 280, 371 P.3d 329, 334 (2016) (citing *Knowlton v. Wood River Med. Ctr.*, 151 Idaho 135, 140, 254 P.3d 36, 41 (2011)).

> Substantial and competent evidence is relevant evidence that a reasonable mind may accept to support a conclusion. Substantial and competent evidence is more than a scintilla of evidence, but less than a preponderance. [This Court] will not disturb the Commission's conclusions on the weight and credibility of the evidence unless those conclusions are clearly erroneous.

*Hope v. Indus. Special Indem. Fund*, 157 Idaho 567, 570–71, 338 P.3d 546, 549–50 (2014) (citations omitted).

This Court freely reviews the Commission's interpretation of the workers' compensation statutes. *Id.* at 571, 338 P.3d at 550 (citing *Brown v. Home Depot*, 152 Idaho 605, 607, 272 P.3d 577, 579 (2012)). "The provisions of workers' compensation laws are to be liberally construed in favor of the [employee], as the humane purposes they seek to serve leave no room for narrow, technical construction." *Fowble v. Snoline Exp., Inc.*, 146 Idaho 70, 74, 190 P.3d 889, 893 (2008) (citing *Kinney v. Tupperware Co.,* 117 Idaho 765, 769, 792 P.2d 330, 334 (1990)).

"This Court reverses the Commission's decisions when the findings of fact do not as a matter of law support the order." *Id.* (citing I.C. § 72-732(4)). "All facts and inferences are

---

whether Aguilar is barred from recovering permanent disability benefits due to his alienage; (3) whether Aguilar has a remedy outside of Title 72, Idaho Code if he does not recover; and (4) whether Aguilar engaged in injurious practices that may reduce benefits under Idaho Code section 72-435.

viewed in the light most favorable to the party who prevailed before the Commission." *Corgatelli v. Steel W., Inc.*, 157 Idaho 287, 290, 335 P.3d 1150, 1153 (2014) (citing *Zapata v. J. R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999)).

If the Commission acts "beyond the bounds of its statutory authority the Commission has acted arbitrarily and capriciously and has manifestly abused its discretion." *Curr v. Curr*, 124 Idaho 686, 691, 864 P.2d 132, 137 (1993).

## IV. ANALYSIS

The ultimate issue in this appeal is whether the Commission erred in deciding the ISIF is not liable to Aguilar under Idaho Code section 72-332(1). That code section reads as follows:

> If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, . . . and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account [fund] [sic].

In order for the ISIF to be liable to an injured worker, the claimant must prove that he is totally and permanently disabled and that he suffered from a previous impairment that was "manifest." *See Hope,* 157 Idaho at 571, 338 P.3d at 550. A claimant can establish total, permanent disability by showing "his or her medical impairment together with the nonmedical factors total 100%" disability, or by showing that he or she "fits within the definition of an odd-lot worker." *Boley v. State, Indus. Special Indem. Fund,* 130 Idaho 278, 281, 939 P.2d 854, 857 (1997). "An odd-lot worker is one who, as a result of the injury, is impaired to an extent that his or her ability to perform services is so limited in quality, quantity, or dependability that no reasonable market for his or her services exists." *Lethrud v. State, Indus. Special Indem. Fund,* 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995) (quoting *Ragan v. Kenaston Corp.,* 126 Idaho 152, 155, 879 P.2d 1085, 1088 (1994)). In its decision, the Commission found that Aguilar was totally and permanently disabled as a result of his falling within the "odd-lot" category. In

8

addition, the Commission concluded Aguilar was totally and permanently disabled as an odd-lot worker before his second injury.

**A. The Commission found Aguilar's limitations and restrictions had not materially changed following the second injury. Having drawn that conclusion, the Commission failed to apply the correct legal test in analyzing the ISIF's liability.**

Aguilar claims the Commission implicitly found him totally and permanently disabled as a result of his first injury in 2006 and prior to his second injury in 2011. Aguilar contends the Commission's reliance on this finding to reject ISIF liability was also erroneous.

As noted, the Commission explicitly found Aguilar totally and permanently disabled "under the odd lot doctrine as of the date of the hearing." However, the Commission also concluded that: (1) "prior to October 3, 2011[,] [Aguilar] was already restricted to light duty [work] because of his pre-existing low back condition[,] . . . notwithstanding the fact that by June of 2010 [Aguilar] had returned to physically demanding concrete work[;]" (2) Aguilar's "low back limitations/restrictions did not materially change following the 2011 accident[;]" and (3) Aguilar "is totally and permanently disabled by virtue of his low back condition alone, . . . as those conditions existed as of October 3, 2011."

The Commission also found:

> With respect to the pre-existing low back condition[,] Dr. Janzen testified that Claimant is not any worse off than he was before the subject incident. In other words, a comparison of the restrictions/limitations applicable to Claimant on a pre-injury basis with those applicable to Claimant as of the date of hearing reveals no significant difference. Claimant's low back condition was just as limiting to Claimant on the date of hearing as it was prior to the October 3, 2011, accident.

The Commission thus determined Aguilar to be restricted to light duty work both *before* and *after* his second injury. The Commission found Aguilar to be totally and permanently disabled as a result of his light duty work restriction because his "limited English language skills[,]" minimal education, and lack of "training or transferable job skills" precluded him from "sedentary and light duty employment." A fair reading of the Commission's decision confirms that the Commission implicitly found Aguilar to be totally and permanently disabled *before* his second injury, as his work restrictions, lack of English skills, limited education, and lack of transferable work skills all pre-dated the second injury.

9

The Commission may find an employee totally disabled before a second injury. The effect of doing so may absolve the ISIF of liability. *See Fowble*, 146 Idaho at 75, 190 P.3d at 894. However, before the ISIF can avoid liability in this way, the Commission must apply the proper legal test. The Commission failed to apply that test here. The applicable test is set out in *Bybee v. State, Indus. Special Indem. Fund,* 129 Idaho 76, 82, 921 P.2d 1200, 1206 (1996). To the extent the Commission implicitly found Aguilar to be totally and permanently disabled *prior* to his second injury (and it appears that it did), and then failed to apply the appropriate test, it erred as a matter of law.

> The test to be applied under the Commission's ruling is as follows:

> In all cases in which a claimant seeks to establish ISIF liability, I.C. § 72-332(1) places the initial burden on that party to establish that the pre-existing impairment and the subsequent injuries in some way combined to result in total permanent disability . . . [T]his requirement is not met if the total permanent disability pre-dates the [subsequent] industrial injury. Therefore, the claimant in this type of case must presumptively establish that she is not an odd-lot worker, *ie.*[sic] that regular and continuous employment is available to her. A claimant will be able to do this simply by showing that she was working regularly at a job at the time of injury.

> Once the claimant makes her initial showing, the ISIF must establish that she was in fact an odd-lot worker even though employed at that time. To do so, it must show that the claimant's actual employment was due to "a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on [her] part."

*Bybee,* 129 Idaho at 82, 921 P.2d at 1206 (citations omitted).

Here, the record shows that Aguilar met his initial burden because it was undisputed that he was working regularly at two rigorous jobs before his second injury. Once that showing was made, the burden then shifted to the ISIF to show Aguilar was an odd-lot worker before his second injury. The Commission makes no mention of and apparently did not recognize the burden had shifted to the ISIF as *Bybee* requires. As a result, any finding by the Commission that Aguilar was rendered totally and permanently disabled prior to the second injury was in error. The decision of the Commission must therefore be vacated and remanded. In the event that the ISIF cannot carry its burden under *Bybee*, Aguilar would still need to prove ISIF's liability by showing the elements of section 72-332. *See Fowble*, 146 Idaho at 75, 77, 190 P.3d at 894, 896.

10

**B. The Commission also erred by failing to apply the disjunctive test for causation as set out in Idaho Code section 72-332.**

According to the Commission's decision, once total and permanent disability has been established, the employee must prove the following four elements to impose liability on the ISIF: (1) the claimant suffered from a pre-existing impairment; (2) the pre-existing impairment was manifest; (3) the pre-existing impairment was a subjective hindrance to employment; and (4) the pre-existing impairment "combined with the impairment referable to the [second] industrial accident to render [an employee] totally and permanently disabled." The Commission cited *Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 155, 795 P.2d 312, 317 (1990) for the articulation of this test. The Commission found that the fourth element had not been established, and concluded that the "Claimant has failed to prove that but for his pre-existing impairments he would not be totally and permanently disabled." Aguilar contends this conclusion of the Commission did not apply the appropriate legal test, because the fourth element set out in *Dumaw* is incomplete and therefore incorrect. Aguilar is correct that the Commission's reliance on that case was legally flawed. As a result of the Commission's use of an incomplete test, it erred as a matter of law.

While the Commission correctly identified the "but for" test as being applicable, the operative statute, Idaho Code section 72-332, establishes *two* alternative ways in which causation may be established. *Sines v. Appel*, 103 Idaho 9, 14, 644 P.2d 331, 336 (1982). The statute states in relevant part:

> (1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury . . . arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury . . . *or* by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease . . . .

I.C. § 72-332 (1) (emphasis added).

The Commission's decision only dealt with one method of proving the ISIF's liability. Because there is medical testimony in this record to support Aguilar's claim under the second

11

(and ignored) method of proof, the Commission erred as a matter of law. One method of proving the ISIF's liability involves the combined effects test (the one used by the Commission); the other focuses on the aggravation and acceleration of a pre-existing impairment as a result of the second industrial accident.

> [Idaho Code section 72-332(1)] is phrased in the disjunctive, and not in the conjunctive. If either condition exists, i.e., total permanent disability occasioned by the combined effects of both the preexisting impairment and the subsequent injury, or *if the facts disclose aggravation and acceleration of the preexisting impairment* by the industrial accident, then the liability of the I.S.I.F. arises.

*Sines*, 103 Idaho at 14, 644 P.2d at 336 (italics added).

The "but for" test "encompasses both the combination scenario where each element contributes to the total disability, and the case where the subsequent injury accelerates the pre-existing impairment." *Bybee,* 129 Idaho at 81, 921 P.2d at 1205. Although Idaho Code section 72-332 specifically includes the means of proving liability of the ISIF when the subsequent injury "aggravates and accelerates the pre-existing impairment," recent cases applying the test (including *Dumaw*, which was relied on by the Commission) have inexplicably omitted this alternative method of proof. *See, e.g., Green,* 160 Idaho at 285, 371 P.3d at 339; *Hope,* 157 Idaho at 571–74, 338 P.3d at 550–553; *Corgatelli,* 157 Idaho at 296–98, 335 P.3d at 1159–61.

Accordingly, we take this opportunity to recognize and correct the incomplete articulation of the fourth element of this test set out in *Dumaw*, *Green*, *Hope*, and *Corgatelli*. To the extent that those cases do not include a basis for ISIF liability due to the aggravation and acceleration of the pre-existing impairment, those articulations of the four part test are incomplete.

In order to be a correct statement of the law, the fourth element of the test must expressly include both the "combined effects" test as well as the "aggravates and accelerates" test. Thus, the elements a claimant must prove to establish the ISIF's liability are correctly stated as follows: (1) the claimant suffered from a pre-existing impairment; (2) the pre-existing impairment was manifest; (3) the pre-existing impairment was a subjective hindrance to employment; and (4) the combined effects of the pre-existing impairment and the subsequent injury or occupational disease resulted in total and permanent disability; *or* the subsequent injury or occupational

12

disease aggravated and accelerated the pre-existing impairment to cause total and permanent disability. I.C. § 72-332. The pre-existing physical impairment may arise "from any cause or origin." *Id.*

Aguilar argues that the Commission failed to apply both prongs of the disjunctive test set out in Idaho Code section 72-332(1) for determination of ISIF liability. In this regard, Aguilar is correct. The Commission's failure to apply the appropriate test is a sufficient basis to vacate the Commission's decision, to remand the case to the Commission, and to require it to apply the correct legal test. *See Sines*, 103 Idaho at 14, 644 P.2d at 336.

### C. Neither party is entitled to an award of attorney's fees.

The ISIF contends it is entitled to attorney's fees as a sanction against Aguilar based on Idaho Appellate Rule 11.2. Under Rule 11.2, attorney's fees may be awarded as a sanction if a party files a frivolous appeal or files an appeal for an improper purpose. *Andrews v. State, Indus. Special Indem. Fund*, 162 Idaho 156, 160, 395 P.3d 375, 379 (2017) (quoting *Akers v. Mortensen*, 160 Idaho 286, 289, 371 P.3d 340, 343 (2016)). Because Aguilar has succeeded on appeal, his appeal was obviously not frivolous and the ISIF is not entitled to attorney's fees under Rule 11.2.

Aguilar argued for the first time in his reply brief a claim to attorney's fees on appeal. Notably, Aguilar did not identify attorney's fees as an issue in his initial brief. Rule 41(a) of the Idaho Appellate Rules requires that a claim for entitlement to attorney's fees be included in a party's initial brief. The reason for the Rule is to put the opposing party on notice that a response is necessitated. If a claim is not included in the initial brief, the opposing party will not have an opportunity to respond to it. However, this Court may "permit a later claim for attorney fees under such conditions as it deems appropriate." I.R.A. 41(a). We are unpersuaded that any conditions exist that warrant deviation from the general provisions of this Rule. Because Aguilar's request for attorney's fees did not comply with the applicable rule, and no extenuating conditions exist, his request is denied.

### V. CONCLUSION

Because the Commission implicitly found Aguilar totally and permanently disabled *prior* to the second injury, and it was uncontested that Aguilar was working regularly at two different

13

jobs at the time of the second injury, the Commission failed to appropriately shift the burden of proof to the ISIF. In addition, the Commission erred by failing to analyze both prongs of the disjunctive test as required by Idaho Code section 72-332(1). As a result of these two errors, the order set out in the Commission's decision is vacated. The case is remanded for further proceedings consistent with this opinion. No attorney's fees are awarded on appeal. Costs are awarded to Aguilar.

Chief Justice BURDICK, Justices HORTON, BRODY, and BEVAN CONCUR.